**Randy LINDSAY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 76–1474.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1976.

Decided Oct. 19, 1976.

R. Steven Brown, Asst. Federal Public Defender, Springfield, Mo., for appellant; David R. Freeman, Federal Public Defender, Kansas City, Mo., on the brief.

James C. England, Asst. U. S. Atty., Springfield, Mo., for appellee; Bert C. Hurn, U. S. Atty., Kansas City, Mo., on the brief.

Before GIBSON, Chief Judge, MARKEY, Chief Judge,* and STEPHENSON, Circuit Judge.

PER CURIAM.

This is an appeal from the judgment of the district court for the Western District of Missouri, Southern Division,[1] following a trial in which a jury found Lindsay guilty under 18 U.S.C. §§ 2421, 2422. We affirm.

#### Background

Lindsay, with Adrian Bradd and three females, traveled from Chicago, Illinois, to Pulaski County, Missouri. They arrived, secured accommodations at a local motel, and rendezvoused with two other females. That same day, upon information that he had transported females in interstate commerce for immoral purposes, Lindsay was arrested at the motel and was lodged in the county jail.

The following day, Lindsay was interviewed there by FBI agent Scruggs. Ad-

---

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. No. 76 CR86–S.

vised of his constitutional rights, Lindsay refused to sign a waiver thereof without aid of counsel. He did, however, agree to some conversation. The interview terminated with Lindsay giving a false identity and refusing to comment on events leading to his arrest. Subsequently, a member of the military police interviewed Lindsay in his cell to ascertain his true identity. That interview concluded with Lindsay requesting another interview with Scruggs. The requested interview commenced with Lindsay again being advised of his rights by Scruggs. Lindsay listened to, read and signed a waiver.[2] Thereafter, Lindsay stated that he knew the three females were being transported for prostitution; that his role was to learn how to manage "the chicks," that he was concerned with their operation and care; and that his expenses and the entire journey had been financed by Bradd. Counsel was appointed for Lindsay on February 9, 1976. During the grand jury investigation, Lindsay's counsel moved to suppress Lindsay's statements to Scruggs. The district court denied that motion after a hearing. An indictment was returned on March 4, 1976, charging Lindsay with violations under Title 18.

A jury trial commenced on May 3, 1976. Lindsay testified contrary to some of his pretrial statements. He testified that he was scared and unaware of what he was signing when he signed the waiver. Lindsay admitted that he was never threatened but could tell he was in trouble by merely looking at the authorities. A rebuttal witness testified to the reading of Lindsay's rights and his signing of the waiver. Lindsay twice moved for acquittal on the ground that the legally admissible evidence was insufficient to establish his guilt beyond a reasonable doubt. He also objected to Scruggs' testimony as lacking corroboration. The motions were denied and the objection overruled. A jury verdict of guilty was entered May 3, 1976. On May 28, Lindsay was sentenced to an indetermi-

nate term under the Youth Corrections Act, 18 U.S.C. § 5010(b).

## OPINION

Though Lindsay points to conflicts between his extrajudicial admissions and his testimony and between his testimony and that of the prosecution witnesses, it is clear that the jury has resolved those conflicts and has done so on the basis of legally adequate and admissible evidence.

■■■ The government essentially relied on testimony concerning Lindsay's extrajudicial admissions and corroborating testimony of Denise Childress, one of the three transported females. Extrajudicial admissions of essential facts or elements of the crime must be corroborated by substantial, independent evidence. *Smith v. United States*, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954); *accord, United States v. Kitzman*, 520 F.2d 1400, 1404 (8th Cir. 1975). Lindsay contends here that his admissions were uncorroborated and that the district court erred in admitting testimony thereto over his objection. We disagree. The transported female Childress testified that Lindsay operated the automobile during their journey from Illinois to Missouri, that he participated in the introduction of the transported females to two other females of similar repute, and that he apparently participated in securing her accommodations. The Childress testimony thus connected Lindsay with the crime itself, not just with an opportunity to commit the crime. Such testimony constituted substantial, independent, corroborating evidence. Childress' testimony indicating that Adrian Bradd was in control of her and of the operation did not refute her testimony regarding Lindsay's activities and participation in the transportation of females for immoral purposes. We find no error in the admission of Lindsay's extrajudicial admissions.

■ Lindsay next contends that use of his extrajudicial admissions violated his

---

**2.** Scruggs testified that Lindsay's second appearance was voluntary, i. e., neither prompted by threats nor promises. The record corroborates his testimony and is devoid of even a suggestion that the request for a second interview with Scruggs was involuntary or that the waiver form itself was incomplete or inadequate.

fifth amendment rights and that the district court therefore erred in denying his motion to suppress them. A review of the circumstances prompting Lindsay's statements reveals that his rights were respected. Before his first interview, he was advised of and clearly understood his rights. He refused to sign a waiver form without aid of counsel. While incarcerated, Lindsay was questioned as to his identity by the military policeman, during which questioning he made his voluntary request for another interview. Scruggs again read Lindsay his rights, commencing the requested interview with a full and complete *Miranda* warning. Lindsay was thus reminded that he could remain silent and could consult with counsel, and was given a full and fair opportunity to exercise those options. Lindsay thereupon read and signed the previously refused waiver form.

In our opinion, the subsequent signing of the waiver merely evidenced reconsideration. This is not a case in which authorities failed to honor a decision of a person in custody to cease interrogation. Lindsay's earlier indication of a desire for counsel was clearly and voluntarily abandoned. Here the authorities honored Lindsay's voluntary request, resuming interrogation only after the provision of a fresh *Miranda* warning. Conflicts in testimony were apparently resolved below, as they were in *United States v. Davis*, 532 F.2d 117 (8th Cir. 1976) and *United States v. Golay*, 502 F.2d 182 (8th Cir. 1974). We find no error by the district court in denying the motion to suppress Lindsay's extrajudicial admissions. See *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). Affirmed.